## SUPREME COURT — SPECIAL TERM — WARREN COUNTY.

### September, 1922.

## THE PEOPLE EX REL. CUSHING v. HERBERT SMITH, SHERIFF.

(119 Misc. 294.)

(1) PENAL LAW, SECTION 1500A—OPERATING HYDRO-AIRPLANE WITHOUT MUFFLER—EVIDENCE.

A hydro-airplane, which not only floats on the water but flies through the air when doing the work for which it was designed, is not a "floating structure" within the meaning of section 1500a of the Penal Law, which declares a person guilty of a misdemeanor who operates a boat, barge, vessel or "other floating structure" on certain waters, without having the exhaust from the engine run through a muffler so constructed and used as to muffle the noise of the exhaust in a reasonable manner.

(2) SAME—TESTIMONY TO SHOW IMPRACTICABILITY OF MUFFLER ON ENGINE IS COMPETENT.

Upon the trial before a justice of the peace of one charged with the violation of said statute evidence tending to show that it was impossible

to construct a muffler that could be used practically on airplanes is admissible, and where upon the objection such testimony was excluded and defendant convicted he will be discharged on habeas corpus.

HABEAS CORPUS.

*J. Edward Singleton,* for relator.

*Henry W. Williams,* for defendant.

ANGELL, J.:

Relator is the pilot of a hydro-airplane operated for commercial purposes in and over the waters of Lake George and contiguous territory. He has been arrested on an information charging a violation of section 1500a of the Penal Law. He was tried before a justice of the peace, and found guilty. He has sued out a writ of habeas corpus, contending that he was illegally punished.

Section 1500a provides as follows:

" Sec. 1500a. Sound of exhaust on gasoline motor boat to be muffled. A person who operates a boat, barge, vessel or other floating structure, on Lake George, Cayuga and Seneca lakes, or on the canal system of the state as constructed or improved under the provisions of chapter one hundred and forty-seven of the laws of nineteen hundred and three and amendatory acts and chapter three hundred and ninety-one of the laws of nineteen hundred and nine and amendatory acts, or upon any of the lakes, rivers or streams used in connection with said canal system, propelled wholly or partly by an engine operated by the explosion of gas, gasoline, naphtha or other substance, without having the exhaust from the engine run through a muffler so constructed and used as to muffle the noise of the exhaust in a reasonable manner, shall be guilty of a misdemeanor;    *    *    *  "

The question is, therefore, is a hydro-airplane, or seaplane,

as it is commonly called, a " floating structure " within the meaning of that act, or otherwise within it? Counsel for the defendant states that the seaplane concededly floats, that it is a structure, that it is propelled by an engine operated by gasoline without a muffler attached, and that consequently it is necessarily within the prohibition of the statute. It does not seem to me the question can be thus summarily disposed of.

This statute was first enacted in 1913 and then applied only to Lake George. It is clear that the evil then aimed at was the noise, rendered unpleasant to residents by constant repetition, of the exhaust from motor boats and similar structures upon the waters of the lake. This evil was remedied by the enactment. The evidence does not show when seaplanes were first used, but it is common knowledge that they were not in general use at that time, and the statute could not have been aimed at them.

In 1917 the section was amended to include within its terms Cayuga and Seneca lakes, the canal system of the state, and all lakes, rivers and streams used in connection with the canal system. The canal system includes the Hudson, Mohawk, Oswego and Genesee rivers, Lakes Champlain, Oneida, Seneca and Cayuga; a considerable portion of New York harbor—at least the upper bay, the East river and part of Long Island sound. In a broad sense Lakes Erie and Ontario are also a part of the system, as most of the freight transported through the canal proper reaches it by way of these lakes, and some of the fleets going through the canal navigate the waters of Lakes Erie and Ontario as a part of their trips.

The kind of craft included in the section was not enlarged in any way by the amendment of 1917. The wording is unchanged in this respect. The waters to which the prohibition applied were, however, greatly extended. That was the only change. It would seem necessarily to follow that if seaplanes were not within the intendment of the legislature at the time of

the original enactment in 1913, they are not within the amendment of 1917.

This is in accord with reason. It is difficult to believe that the legislature intended to prohibit the use of seaplanes on the waters specified in the statute. These waters, or some of them, are necessary to the development of the new science exemplified by the flying boats. It is likewise true that the use of these waters is essential in interstate flights and in flights to the Dominion of Canada. The seaplanes may carry passengers, mail and express to other states or countries. So far as they do this, it is not within the power of the legislature to limit their activities, even if it desired to do so. That is a matter within the exclusive jurisdiction of the federal congress.

Furthermore, a seaplane is not, it seems to me, a "floating structure" within the meaning of the act. It is true it floats. It also flies. It floats only for the purposes of harborage and of rising. When in actual operation it is in the water but a small fraction of the time. After the engine is started the plane is upon the water for from 50 to 300 yards, when the air becomes its habitat. It may go a few miles, or hundreds of miles, before resting again upon the water. It is a structure unique in the mechanical world. Science has discovered and art perfected this marvelous machine. It is the first and only one in the history of invention that is at home both in the air and on the water. If we may apply to mechanics a biological term, it is an amphibious creation. To hold that this product of man's genius—which floats on the water but which flies through the air when doing the work for which it was designed—is a "floating structure," as that term is used in the act in question, seems to me entirely without warrant. This is in line with well-settled principles of construction. "A thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." (Riggs v. Palmer, 115 N. Y. 506.) In construing the Penal Law the court will not

go beyond the clear meaning and purpose of the statute, or attempt to spell out a new offense which is not clearly indicated by the ordinary meaning of the words used. (People v. Briggs, 193 N. Y. 457.)

On the trial relator offered to prove that it is impossible to construct a muffler that can be used practically on airplanes, because the great heat of the exhaust will destroy it. An objection to this evidence as immaterial was sustained. The evidence should have been admitted. It is an accepted maxim that the law does not seek to compel that which is impossible of performance. (Walden v. City of Jamestown, 178 N. Y. 213.) Therefore, it was proper for defendant to show as a defense that what plaintiff contended the law required of him he could not do.

The complainant here represents a large number of property owners on Lake George who are annoyed and whose property is made less desirable by the noise, at times defeaning, of seaplanes going at frequent intervals up and down the lake in close proximity to them. These planes make their base at the head of the lake, and carry passengers for hire, flying at varying heights above the lake's surface and shores. This form of commercialization of the planes on a small body of water may well constitute a nuisance which it is within the power of the legislature to abate. For the reasons stated, however, it does not seem to me the legislature has done, or has intended to do, this by the enactment of the statute in question.

The writ should be sustained and the relator discharged.

Ordered accordingly.